## KEPHART v. BUTCHER *et al.*

1. **Promissory note: PAYMENT BY NOTE.** The receipt by the payee from the maker of a promissory note, of the note of a third person, will be deemed a *conditional* and not an *absolute* satisfaction of the original debt or *note* of the maker, unless otherwise agreed between the parties.

2. ——— **INDORSEMENT: NEGLECT.** When the payee of a promissory note receives from the maker an unmatured negotiable note, payable to such maker, and indorsed by him in blank to such payee in conditional payment of the original note, a failure to duly present the second note for payment and give notice of non-payment to the indorser, will not operate as absolute satisfaction of the original note, if the party thus receiving the note can affirmatively and clearly show that the indorser sustained no actual damage. And when the indorser retained in his own hands ample security for the payment of the note not protested, he was not prejudiced by such neglect.

*Appeal from Monroe District Court.*

WEDNESDAY, OCTOBER 19.

AS TO RIGHT OF CREDITOR TO SUE UPON THE ORIGINAL CONSIDERATION. — The petition alleges that in 1854, the plaintiff loaned six hundred dollars to S. H. Butcher, Lawson Bradley and M. Carlton, and received their notes therefor, payable to him. That in 1858, the defendants, Butcher and Redding, through Butcher, made an arrangement with the plaintiff for the note above mentioned, which arrangement was this: defendants delivered to plaintiffs a note on one A. D. Woodruff, for $500, due September 1st, 1859, which note was payable to the order of the defendants, and was indorsed in blank by them, and by them alone, to the plaintiff; their own note for $85, due 1st of September, 1859, and cash to make in all an amount equal to the note first above mentioned; whereupon the plaintiff delivered up said note first mentioned to the defendants. That neither the Woodruff note, nor the note for $85, given by defendants to the plaintiff, has ever been paid. That the plaintiff did not take these notes as *absolute payment*, but only as *conditional* payment, that is, as payment, provided they were paid, but not otherwise. The plaintiff alleges these facts, and claims to recover for the original debt, tendering back to the defendants, the Woodruff note and the defendants' own note for $85.00. The answer denies that the Woodruff note, and the notes of the defendants for $85.00 were taken as a conditional payment, alleges that the Woodruff note was not protested, and, therefore, the defendants are discharged; and the answer further alleges, that by reason of the plaintiff's negligence the debt on Woodruff has been lost. The cause was tried to the court, who, from the testimony, found the facts as follows:

" The court finds the following facts: On the 8th day of

November, 1858, the plaintiff was the owner of a note amounting at that time to near the sum of six hundred and sixty-five dollars, which said note had been executed by S. H. Butcher, Lawson Bradley and M. Carlton; said note had been executed some time prior to said last-mentioned date, and shortly after its execution the said parties who signed said note became partners in the milling business; afterwards Butcher and Redding, the present defendants, became the successors to said Butcher, Bradley & Carlton, and were so successors on the day first above named; and that on said day said Butcher & Redding (the defendants), being desirous of obtaining said note, for the purpose, as alleged, to enable said Butcher to institute suit against said M. Carlton on said note for contribution, proposed to exchange for said note a note on A. D. Woodruff, for the sum of five hundred dollars, dated May 5th, 185–, due 1st September, 1859; also a note on themselves (B. & R.) for eighty-five dollars, of date of November 8th, 1858, due September 1st, 1859; also eighty dollars in cash. That said plaintiff accepted said proposition and made said exchange, delivering said note of Butcher, Bradley & Carlton to said defendants, and receiving therefor the said Woodruff note, the said note of Butcher & Redding, and the said eighty dollars in cash.

"The court further finds that said defendants, at the time of said exchange, agreed orally to guaranty the payment of said note on A. D. Woodruff.

"The court further finds that the said note on A. D. Woodruff was assigned in blank and delivered to said plaintiff on the said 18th day of November, 1858.

"The court further finds that the said plaintiff did not make any demand of payment of said A. D. Woodruff's note, and did not give any notice of the non-payment of said note, nor any other kind of notice in reference to said note.

"The court finds further that there was not, at the time of such exchange, nor at any other time, an understanding or agreement that the transaction of exchange above set forth was to be treated or regarded as a payment absolutely of said note.

"The court also finds that the said A. D. Woodruff note has never been paid; *and that there has been no time since the said note was transferred to plaintiff that said note could have been collected from said A. D. Woodruff.*

"The court also finds that the said note of Butcher & Redding is still unpaid, and is still the property of plaintiff, and that there is now due thereon the sum of seventy-nine dollars, being the amount of the same with interest thereon.

"Upon the above facts, the court renders judgment in favor of the plaintiff, and against the defendant, S. H. Butcher, for the sum of seven hundred dollars, and against the defendants, Butcher and Redding, for the sum of seventy-nine dollars."

Judgment was rendered in accordance with this finding in favor of the plaintiff. From the judgment against him (the proper motions and exceptions having been made in the District Court) the defendant Butcher appeals, between whom and the plaintiff the case stands in this court.

*Seevers & Williams* for the appellant.

*T. B. Perry* for the appellee.

DILLON, J.—There is no claim made in the petition against the defendants, based upon their parol guaranty of the Woodruff note. The finding of the court, therefore, "that the defendants, at the time of the exchange of notes, agreed orally to guaranty the payment of the said Woodruff note," cannot be made the basis of a distinct liability, on the part of the defendants, even if it be conceded that it might have been the foundation of a legal liability, had

it been properly alleged. And it is evident that the court did not found its judgment upon this finding of fact, because judgment was rendered against Butcher alone, in respect of the Woodruff note, and not against the defendants (Butcher and Redding), who, according to the finding, jointly made the parol guaranty.

The material findings, so far as concerns the present appeal, are, that the Woodruff note was taken by the plaintiff (being indorsed in blank by the defendants), in part exchange for the plaintiff's original note against Butcher and others, but without any agreement to regard or treat it as an *absolute* payment; that payment was not demanded of Woodruff, and notice of its dishonor given to the defendants, but that Woodruff was, at the time, and has ever since continued to be insolvent. The appellant makes the point, that some of the findings of fact, adverse to him, are against the weight of evidence; but, on a careful examination of it, we are satisfied that it is so conflicting, and so nearly balanced, as to render it improper, in an appellate court, to interfere on this ground. We shall therefore regard the findings of *fact* as conclusive, and this leaves the question: What is the law arising upon these facts? Upon the facts found (considered, of course, with reference to the case made), is the defendant, Butcher, liable for or on account of the original note (or the consideration thereof), surrendered to him at the time the Woodruff note was received by the plaintiff? Some of the principles of law applicable to this inquiry are well settled. "In general, by our law," says STORY (Notes, § 404), "the receipt of a promissory note of the maker or of a *third person*, will be deemed a *conditional* satisfaction or extinguishing of the original debt or *note* of the maker (that is, if the substituted note is regularly paid), unless otherwise agreed between the parties."

The authorities to this point are very numerous, and we

1. PROMISSORY NOTE: payment by note.

need only to refer to a few of them. *Noel* v. *Murray* (1855), 3 Kern., 167 ; *Glenn* v. *Smith*, 2 Gill & J., 493 ; *Whitbeck* v. *Van Ness*, 11 Johns., 408, and cases ; *McConnell* v. *Stettinius*, 2 Gil. (Ill.), 707 ; *State* v. *Rosborough*, 2 Rich. (Law), 241 ; *Johnson* v. *Weed*, 9 Johns., 310 ; *Muldon* v. *Whitlock*, 1 Cow., 306, and cases ; 2 Pars. B. & N., 153, 155.

As under the findings of facts, it was not agreed between the parties that the Woodruff note should be taken by the plaintiff as absolute payment of his prior existing debt, the presumption is, that it was taken by him as a conditional payment only, that is, if, or when the note was paid. And the case of *Olcott* v. *Rathbone*, 5 Wend., 492, is an authority, that the *delivering* up of the old note by the plaintiff is not *conclusive* evidence that he received the new or substituted notes in absolute payment. See, also, *Morgan* v. *Bitzenberger*, 3 Gill (Md.), 350 ; *Pratt* v. *Foote*, 12 Barb., 209. And the fact that the defendants indorsed the note, and guaranteed it, though verbally, is evidence to show that the plaintiff did not take it in absolute payment and at his risk. *Monroe* v. *Hoff*, 5 Denio, 360 ; *Whitbeck* v. *Van Ness*, 11 Johns., 409, and cases. The plaintiff

2. —— In-  having taken the Woodruff note (which was an dorsement: neglect.  unmatured negotiable note, payable to the defendants, and by them indorsed in blank to the plaintiff) in conditional payment of his prior note, what duties does the law (for no express contract is shown respecting this point) lay him under, in regard to the note thus received? The defendant contends that his relation to the plaintiff was that of an *indorser* of the Woodruff note, and that unless duly presented at maturity, for payment and notice of dishonor given, he was discharged from all liability on that note as well as on the debt or note for which it was taken.

On the other hand, the plaintiff contends, that if he was negligent by not making presentment, and giving notice of non-payment, that the defendant has lost nothing by his

neglect (Woodruff having been all the time insolvent), and the defendant has, therefore, no just cause of complaint.

It is very difficult to ascertain from the authorities the exact state of the law, on these questions. This will be apparent by reference to some of the most approved text books, and the more leading authorities. STORY (Notes, § 405), speaking of the precise point, says: "But when the substituted note" (in this case, the Woodruff note) "is received as *conditional payment* only" (which is the case at bar, as found by the court), "it will amount to an absolute satisfaction, and the creditor will be precluded from recovering on the original debt or note, if it appear that the substituted note, being the negotiable note of a third person, is not paid in consequence of the *laches* of the holder or creditor, or is lost by his neglect."

According to the rule thus laid down, inasmuch as Woodruff was all the time insolvent, it cannot be said that the debt was not paid, or was lost in consequence of the *laches* or neglect of the plaintiff, and therefore the plaintiff is not precluded from recovering on his original debt. By this authority *actual loss* or *damage* is made the test or criterion of the right to fall back upon the original consideration. And see *Clark* v. *Young*, 1 Cranch, 181; *Ward* v. *Evans*, 2 Ld. Raym., 928; *Chamberlain* v. *Delarine*, 2 Wilson, 353, and authorities cited in note *infra*. In the American notes to *Cumber* v. *Wane*, 1 Smith's Leading Cases, 388, the law is stated, to the same substantial effect, as follows: "A creditor accepting a negotiable note, either as collateral security or as a *conditional payment*, is bound to use due diligence in demanding payment, under penalty of being answerable for any *loss incurred by his neglect;* but he is not bound to sue upon it." To same effect, 2 American Leading Cases, 184, 185. Under this rule, as there was no loss incurred by the plaintiff's neglect, he might recover the original claim or cause of action. On the other hand, Mr.

Edwards (Bills and Notes, pages 198, 201) states the law
thus: "Where such a note or bill" (that is, a note or bill
upon a third person), "is delivered without any positive
agreement that it is to be received in full payment, the law
implies an undertaking on the part of the creditor so receiv-
ing it, that he will use due diligence in presenting the same
for payment, and in giving notice of protest. By neglect-
ing to do this, he is guilty of *laches* that *may result* in loss
to his debtor, towards whom he stands in the relation of
an assignee bound to make a speedy and prompt collec-
tion." "He makes the note (by such neglect) his own, and
must rely upon the solvency of the maker. The accept-
ance of such a security creates a new contract, and merges
in it, at least conditionally, the original debt."

Mr. Parsons, in his recent and most valuable treatise
(Notes & Bills, vol. 2, page 154), says: "If the creditor
receives money on the (substituted) instrument, or *be guilty
of laches*, the bill or note operates as a complete satisfac-
tion" of the original consideration.[1]

---

[1] NOTE. — To sustain his text, Mr. Parsons refers to the following authori-
ties, all of which have been examined, and for the sake of illustration, we
throw into the form of a note the points decided, so far as applicable: *Hoar*
v. *Clute*, 15 Johns., 224. Order on third person was given for a prior debt;
presented, dishonored, and plaintiff was allowed to recover on the original
demand. *Gordon* v. *Price*, 10 Ired., 385. If a *bill of exchange* be given for a
prior debt, "it is incumbent on the plaintiff to show that he used proper
diligence on the second bill, and could not obtain payment." Per RUFFIN,
Ch. J. To the same effect, where a bill of exchange is given, see *Dayton* v.
*Trull*, 23 Wend., 345, and the following cases, not cited by Mr. Parsons:
*Bridges* v. *Berfy*, 3 Taunt., 130; *Jones & Mane* v. *Savage*, 6 Wend., 658; *Popley*
v. *Ashley*, 6 Mod., 147. Mr. Parsons cites also the following cases: *Denniston*
v. *Imbrie*, 3 Wash. C. C. R., 396. Here the debtor indorsed a bill *drawn by* and
*upon third persons*, and remitted to his creditor, who received it as *payment;*
held that the debtor was only liable as indorser, and was discharged for
want of notice whether drawee would have paid it or not. *Woodcock*
v. *Bennett*, 1 Cow., 711. If a *draft* is accepted on a debt, diligence must be
used, or it will be payment of the debt. *Morgan* v. *Bitzenberger*, 3 Gill, 350.
Creditor surrendered note on receiving the debtor's order on a third person,
which was dishonored, and tendered back to debtor; held that creditor
might recover on original consideration. In *State* v. *Rosborough*, 2 Rich.
(Law), 241, it is said, that to have the note of a third person operate as pay-
ment, there must be proof of "loss through the negligence of the plaintiff

To the same effect is the *dictum* in *Torbey* v. *Barber*, 5 Johns., 73, where it is said "that taking a note either of

in collecting the assets," and such seems to be the effect of *Snyder* v. *Findley*, Coxe (N. J.), 248, though in neither was the note *indorsed* by the debtor. In *Chamberlain* v. *Delarine*, 2 Wilson, 353 (1767), it was held that where a creditor accepts a note or draft of his debtor, and holds it an unreasonable time before demanding the money, and the person on whom it is drawn becomes insolvent, it is the creditor's loss. This case turned on an actual loss, and so did *Smith* v. *Wilson*, Andrews, 187, 228, where the defendant, being indebted to plaintiff, indorsed and delivered him a note on one Jones, to apply when paid. Jones became bankrupt two months after the note fell due, and the court held, that as the money was not demanded, the plaintiff had lost his original debt.

From this review of the cases, it would seem upon the authorities, that where the holder of a pre-existing debt takes a bill of exchange on a third person, it will operate as payment of the original debt, if due demand and notice be not given. And such is indeed the express provision of the statute of 3 and 4 Anne, ch. 9 (quoted 6 Mod., 147 *note*, and in 2 Parsons on N. & B., *ubi sup.*), in relation to *bills of exchange*, and this statute may have controlled the English decisions, without always being cited in the cases. But we have found no case where the creditor received for a prior debt, a note indorsed by the debtor alone, and where it was affirmatively shown that he had received no detriment from want of strict presentment and notice, where it has been held to extinguish the original demand. Where the vendee indorsed the note of a third person for goods received *at the time*, it is held in Pennsylvania, that he can only be charged as an indorser. *Shriner* v. *Keller*, 25 Pa. St., 6; and see as to duties of holder, *McLughan* v. *Bovard*, 4 Watts, 308. That actual loss is necessary to prevent creditor from falling back on original consideration, see, also, *Wright* v. *Crockery Ware Co.*, 1 N. H., 282; *Clark* v. *Young*, 1 Cranch, 181 (where there were other indorsers besides debtor), 6 Mod., 147; *Ward* v. *Evans*, 2 Ld. Raym., 928; *Gallagher* v. *Roberts*, 2 Wash., 191; *Hamilton* v. *Cunningham*, 2 Brock., 350, 2 Am. Lead. Cases, pages 184, 185; notes to *Tobey* v. *Barber*, and *O'Kie* v. *Spencer*, where this subject is very fully examined. It is there said "that no case seems to have gone so far as to decide that a defense, resting on the ground of a failure to present an instrument (note or bill) taken on account of a debt, cannot be rebutted by clear evidence, showing that the parties primarily liable for its payment were insolvent at the period when it reached maturity, and that the default of the plaintiff has not been prejudicial to the interest of the defendant." "It would be going very far thus to determine. The true rule, therefore, would seem to be, that the failure of the creditor to pursue the usual course of business, with reference to commercial instruments taken for a debt is a *prima facie* bar to a suit for the debt itself, which may, notwithstanding, be removed by proving that the instrument was unavailing as a means of payment, and that the debtor has not been injured by the omission to (present or to) give notice of its non-payment." These observations apply equally to the case whether the instrument taken is a note or bill. And as an indorser of a note occupies, generally speaking, the position of the drawer of a bill, it is difficult to see how any distinction in principle can be drawn between a case where the debtor draws his bill on another, and where he indorses the note of a third person not due, which amounts simply to an order on the maker, to pay it to the creditor.

the debtor or a third person for a pre-existing debt is no payment, unless so agreed, or unless the creditor is guilty of *laches* in not presenting it for payment in due time."

Under one class of authorities, as the Woodruff note was not presented in due time, it would seem to follow that the plaintiff's right to recur to his original claim or debt was extinguished, and that his only remedy was upon the note which he had thus received. We have given to this question great consideration. Upon the authorities it is difficult of determination. But upon reason and principle, it seems to us easy of solution. We therefore hold the better and true rule and criterion to be *actual loss* or *prejudice*, and consequently the creditor who has taken the note of a third person for a pre-existing debt is not debarred from resorting to the original consideration, although he has not presented the instrument or given notice of its dishonor, provided he can clearly and satisfactorily show that the debtor has not, in consequence of such omission, sustained any injury. But whatever doubt there may be as to the general question as to the effect of failing to protest, and give notice where the instrument is a *note* which is indorsed, and indorsed by the debtor *alone*, and no *actual* damage has ensued from want of notice, the other circumstances of the case at bar, as shown by the testimony (all of which is before us), place the plaintiff's right to recover on clear and undoubted grounds. It appears from the defendant's own testimony, that the original debt due the plaintiff was for money borrowed to buy machinery to build the mill. It was, what is styled in the testimony, a "mill debt." The mill was completed, and Redding, one of the defendants, at length obtained an interest in it. Both Redding and Butcher, in August, 1858, sell the mill to Woodruff, for the sum of $2,500, who made a cash payment in November, 1858, of $500, and gave his four notes of $500 each, payable March 1st, 1859, September 1st, 1859, March

1st, 1860 and September 1st, 1860. The note due September 1st, 1859, was the one turned out to the plaintiff by the defendant, who at the time stated "that the mill would have to stand good for the note." To secure these notes, the *defendants retained the title to the mill*, and afterwards foreclosed Woodruff's interest in the mill, and again became the owners of it. It is clear that the defendant, Butcher, has in his own hands the security which equitably attached to the note received by the plaintiff, and which was the *second* note to become due; and it is not pretended that the mill has depreciated in value. The testimony shows that it was much improved by Woodruff while he was in possession. Our conclusion, then, is that the law is with the plaintiff, as we think, upon the general question argued by counsel; but most clearly is it with him upon the special circumstances of the case.

Judgment affirmed.