CIRCUIT COURT FOR MULTNOMAH COUNTY, NOVEMBER TERM, 1869.

### JACOB DAVIS v. JOHN MASON.

GOLD COIN.—Where the plaintiff sues for gold coin loaned to the amount of $80, he will not be entitled to recover a judgment for $114, on the ground that the coin was worth that sum in currency.*

IDEM.—In such case, evidence of the relative value of coin and legal tender notes is not admissible.

CUSTOM.—Nor evidence of the custom of a particular bank to pay coin on checks that do not reduce the kind of currency, or of the customs of other banks in the place in this respect.

EXPRESS CONTRACT.—Where the pleadings admit an agreed price for labor, evidence of its reasonable value is not admissible.

EXPRESS AND IMPLIED CONTRACTS.—Where the parties have agreed orally that the wages shall be at a fixed rate in gold coin, but have failed to reduce the agreement to writing, it is held not to amount to a specifical agreement, and evidence of the reasonable value is admissible, under proper pleadings.

THE plaintiff declared for the reasonable value of his services from July 1, 1868, to July 1, 1869; and for $80 gold coin loaned, which he alleged to be of the value of $114 in legal tender notes.

The answer sets up a special contract that the defendant would perform the labor at $60 per month; alleges payment, to an amount specified; and denies that the defendant borrowed any money from the plaintiff.

The replication denies making the special contract, and avers that no price was ever agreed to or bargained, except that the parties agreed that the labor should be paid in gold coin and should be at the rate of $60 per month up to January 1, 1869, and from that time $70 per month.

In opening the case to the jury, the plaintiff's counsel claimed the reasonable value of the labor estimated in legal tender notes. A question was raised whether he had not admitted a specially agreed value. The plaintiff obtained leave, and amended his replication, so as to assert that all that was ever assented to in regard to the wages was assented to orally, and not reduced to writing, and that one

---

* The question was not raised whether the plaintiff could recover a judgment for gold coin, the only writing being a check drawn on a third party by the plaintiff, which did not mention the kind of currency.

of the terms of the agreement was that the wages should be paid in gold coin.

One or more of the plaintiffs' witnesses testified that the labor was reasonably worth $109 per month. The plaintiff offered to prove that the $80 loaned was worth $114 in currency. This was objected to as irrelevant and incompetent, and the objection was sustained. The plaintiff testified that in loaning the $80 he gave the defendant a check on his banker, which check did not specify the kind of currency. The plaintiff then offered to prove that it was the custom of that bank to pay gold coin on all checks that did not specify the kind of currency, and that such was the custom of all bankers in the same city. This evidence was objected to by the defendant as irrelevant and incompetent, and the objection was sustained.

UPTON, J. instructed as follows :

The plaintiff sues to recover $80, which he alleges he loaned to the defendant, and also for the reasonable value of his services.

Where the parties agree upon and contract for a stipulated value or rate of wages, the plaintiff can recover no more than the amount agreed upon. But where the parties have not determined the rate by their own agreement, the party performing labor at the request of the other is entitled to recover the reasonable value of his services.

To constitute an express contract fixing the rate of wages, there must be the assent of two minds to one and the same proposition, and the contract must be such as can be enforced.

If these parties assented that the wages should be a certain amount of gold coin, and if its payment in gold was a material condition or term of the agreement, it was a contract that could not be fully entered into so as to make all its terms binding upon the parties without a writing. The parties cannot be considered as having made such a contract, unless some writing was made.

If no writing was made, the parties did not make a valid contract that the payment should be made in gold coin. If

payment in gold coin was one condition, and the rate of wages another condition, or term, that both parties intended should be part of the contract, it evidently was not agreed that such rate of wages was satisfactory if paid in something of less value than gold coin.

In that case, there was not a binding contract for the payment of gold coin; because for the want of a writing such contract cannot be enforced, and it was not a binding contract for that rate of wages payable in something of less value, because the minds of the two contracting parties never assented to that proposition. Unless there has been an assent of both parties, to a definite mode and measure of compensation, which can be enforced both as to the amount and the value they had in contemplation, they have not by their own act fixed upon the rate of wages, and the law determines it for them. In such case the law declares the compensation to be what the services are reasonably worth. If the plaintiff recovers a judgment for wages in this case, the defendant will be authorized to pay it, if he chooses to do so, in legal tender notes, and it is proper that the jury should estimate the wages in view of that fact, when estimates are made in different kinds of currency by different witnesses.

As to the alleged loan of money, there is no rule of law that will authorize the jury to render a verdict for a greater amount than was loaned, merely because the judgment can be paid in a currency of less value. This may appear to be a hardship in some cases, and it is impossible to institute a system of laws that will never work hardships. When one so far trusts to others as to contract for gold coin, and take no written agreement for its payment, he must suffer the consequence of his neglect, if results do not come up to his expectations.

Jurors are not at liberty to disregard the law in such cases, upon an idea that they can thus do justice between the parties. If courts or juries are at liberty to disregard the law in some cases, what is to prevent them from doing so in all cases, when they do not approve of the law. It is evident that such practice would undermine the foundation

of remedial justice, and would be substituting the arbitrary will of those who are called upon to administer justice, for the settled rules of law upon which every citizen has a right to rely for the protection, not only of his property, but his liberty and his life. It is better that we should sometimes suffer great hardship, whether caused by our own neglect or otherwise, than that we should exchange known rules of law for the arbitrary will of those who undertake to administer the law.

The plaintiff had a verdict, and judgment was entered without specifying the kind of currency.