## WELLS, FARGO & CO., Respondents, v. HENRY VAN SICKLE, Appellant.

Specific Contract—Gold Coin or its Equivalent. Where a promissory note was made payable "in gold coin or its equivalent in United States legal tender notes": *Held*, that a judgment on it simply and solely for gold coin was erroneous; that the judgment should have followed the contract, and fixed the amount to be paid, if paid in gold, and the amount to be paid, if paid in legal tender notes.

Values in Gold or Legal Tender Notes. Where parties make a contract payable in gold coin, or its equivalent in legal tender notes, and do not agree upon a place of payment or a standard by which the relative values of the two currencies can be measured, the place and time of trial will be the market where the values should be estimated.

"Specific Contract Laws." Where a contract is made payable "in gold coin or its equivalent in United States legal tender notes," it does not require a Specific Contract Act (so called) to empower a Court to enforce it according to its terms.

Judgment for Gold Coin or its Equivalent. A judgment on a promissory note payable in gold coin or its equivalent in United States legal tender notes, should be in the alternative, and provide that if default be made in the payment of gold coin, then, as compensation therefor, an amount in legal tender notes, equal in value at the time and place of trial to such gold coin, should be paid.

Appeal from the District Court of the Second Judical District, Douglas County.

The facts are fully set forth in the opinion.

*Clarke & Wells*, for Appellant.

I.   Gold coin and legal tender paper currency are equivalent or equal in law. (*Beatty* v. *Rhodes*, 3 Nev. 240 ; *Reese* v. *Stearns*, 29 Cal. 273.)

II.   A contract to pay gold coin or its equivalent in paper currency cannot be enforced for gold. (*Reese* v. *Stearns*, 29 Cal. 273.)

*T. W. W. Davies*, for Respondents.

I.   The fact that United States legal tender notes have always been and are now at a discount as compared with coin, is notori-

ous, and this and all other Courts should take judicial notice thereof, or at least admit proof to show what is universally understood in the Pacific States in relation thereto.   Such being the universal understanding, it is presumed that all contracts made as the one in question was made, were entered into by the contracting parties having in view such notorious facts as to coin and paper currency.   The note was given and received in view of such understanding.

Courts should carry out the intention of the parties, and enforce contracts as they are actually made.   Where an expression is used which might have a local signification, the parties should be allowed to show what was universally understood in the community by the use of such expression as the sense in which it was used in the contract.   (*Chicago F. & M. Ins. Co.* v. *Keiron*, 27 Ills. 507 ; *Pilmer* v. *Branch B. of the State Bank*, 16 Iowa, 322 ; *Pugh* v. *Duke of Leeds*, Cowp. 720 ; *Robertson* v. *French*, 4 East, 135 ; *Thompson* v. *Sloan*, 23 Wendell, 77 ; *Farwell* v. *Fay*, 7 Missouri, 597 ; *Lampton* v. *Haggard*, 3 Monroe, 150 ; *Chambers* v. *George*, 5 Little, 335 ; *Roberts* v. *Short*, 1 Texas, 373 ; *Schuylkill Nav. Co.* v. *Moore*, 2 Whart. 491 ; *Rindskoff Bros.* v. *Barrett*, 14 Iowa, 101 ; Cowen & Hill's Notes, 2 Phil. Ev. 1409, 1412, and numerous cases there cited ; *Leiber* v. *Goodrich*, 5 Cowen, 186.)

II.   Courts will judicially take notice of the value and condition of the circulating medium in which the business of the country is conducted, for the purpose of interpreting contracts made payable in it.   (*Neal* v. *Durrett*, 7 J. J. Marshall, 101 ; *Dollard* v. *Evans*, 4 Pike, 175 ; *Farwell* v. *Kennett*, 7 Missouri, 595 ; *Roberts* v. *Short*, 1 Texas, 373 ; *Lampton* v. *Haggard*, 3 Monroe, 149 ; *Leiber* v. *Goodrich*, 5 Cowen, 186.)

III.   Judgment was correct, the note being for gold coin or its equivalent.   There is no propriety in holding, as in *Reese* v. *Stearns*, 29 Cal. 273, that where there is no particular place mentioned, whose market is to fix the value of legal tender notes, the contract cannot be specifically enforced.   If no such place is mentioned, the place where the note was given and is payable is

properly the place where the legal tender note should be valued. *Reese* v. *Stearns* is opposed to the uniform current of authority in California, and is at war with honesty, justice, and fair dealing. The law is correctly stated in *Lane* v. *Gluckauf*, 28 Cal. 288, and *Bennett* v. *Stearns*, 33 Cal. 468.

By the Court, WHITMAN, J.:

This action was brought upon the following writing:

"$1,500.00.                    GENOA, August 4th, 1868.

"Ninety days after date, without grace, I promise to pay to the order of J. & J. Spruance, fifteen hundred dollars in gold coin, or its equivalent in United States legal tender notes, for value received, at — per cent. per month interest until paid.

H. VAN SICKLE."

Upon this contract, judgment was rendered on issue joined, for its amount in gold coin. This specification of currency is assigned as error, and this appeal is based solely on that ground. Among the numerous questions which have arisen upon the complications of currency during and since the rebellion, two may be considered as settled: First, that by the so-called Legal Tender Acts two currencies were established in the United States; one of gold, the other of paper. Second, that contracting parties may lawfully elect between the two, and that such election, evidenced by the insertion or omission in the contract of apt words, will be sustained and enforced by the Courts.

It is under these established principles that the contract in suit is to be tested. Appellant relies upon the case of *Reese* v. *Stearns*, decided by the Supreme Court of the State of California. That case as considered by that Court was precisely similar to this, and it is said "The language is ' or the equivalent of such gold coin if paid in legal currency,' which is doubtless the same in legal effect as it would be if the language were ' or the equivalent of such gold coin if paid in money,' or other lawful money." The currency referred to must be the legal tender notes of the United States, or silver coin, for we know of no other legal currency to which reference could have been made. In contemplation of law,

a dollar in legal tender notes is equal to, and therefore the equivalent of, a dollar in gold coin.   In comparing the two kinds of money the law knows no difference in value between them.   It recognizes no other standard of equivalents.   And when parties speak in their contracts of an amount of one kind of money being the equivalent of another kind, without referring to any conventional or other known standard by which the equivalents are to be adjusted, we cannot assume that any standard other than the legal one is intended. If otherwise, where are we to look for the standard by which we are to be guided in the comparison?   Where are we to find the yardstick by which to measure the comparative values of the two different kinds of currency, which the law says are equal, but which the commercial world says are not equal, and the relative values of which are not the same in any two cities in the country?   Shall we seek it in Wall Street, Montgomery Street, Salt Lake, or Los Angeles?   If under any of these peculiar contracts the Courts can enter into a comparison of values between a dollar in gold and a dollar in treasury notes, which in contemplation of law are equal, it must be because it is expressly so agreed, and there should at least be some conventional standard of comparison adopted in the agreement.   Where none is adopted, the standard of equivalents must be that which the law establishes.   Tried by this standard any given number of dollars in legal tender notes is equivalent to the same number of dollars in coin.   (*Reese* v. *Stearns*, 29 Cal. 273.)

If the conclusion reached be correct, the appellant here is right in his position.    But is the conclusion correct?

That for the payment of all private debts contracted since March, 1862, a legal tender paper dollar of the United States is, and has been since that date, the legal equivalent of a gold coined dollar of the same Government, is true.   It is equally true that in the United States the one is not and never has been the mercantile or actual equivalent of the other.   A gold dollar will and would buy more than one legal tender paper dollar in the market.   Courts should not and do not ignore this fact, universally known and conceded. The very case from which quotation has been made recognizes the distinction.

Such then being the case, it necessarily follows that this recog-

nized acknowledged fact, universally acted upon in business circles, becomes an important element in the construction of any contract made with reference to its existence. A contract not illegal is to be construed and enforced so as, if possible, to attain the intention of the parties thereto, and for such attainment it is always proper to look at the general circumstances surrounding its making. Viewed in this light, what is the natural reading of the contract in question ?

It would seem that neither lawyer nor layman could differ on that proposition. The contract made as portion of a mercantile transaction, attempts to secure the payment of a particular kind of legal currency, gold coin; acknowledged to have more intrinsic value in such transactions, dollar for dollar, than legal tender paper notes; and it attempts to provide for a compensation in event of default of such payment, by securing the payment of an equivalent. What sort of an equivalent? And here is the key, if key be needed, to the whole matter. Certainly, not the equivalent suggested by the Supreme Court of California, which is merely nominal, but an actual, practical, mercantile equivalent; that which would buy as much as the gold ; that which would sell for as much in open market; that which in the ordinary use of language is worth as much. Such is the interpretation which must be given this contract, or else it must be admitted that many superfluous words have been used, or that the intention being apparent, the words used are so inapt that the intention must be disregarded.

To adopt the first suggestion would be to unwarrantably interfere with the language used. To follow the second, would be to torture from their plain, ordinary meaning, words which no business man would misunderstand.

It remains to be seen if this contract can be enforced. It was said in the case cited, that one similar could not, because there was no conventional standard of comparison of rules between the two currencies adopted in the agreement ; but the same Court held in *Lane* v. *Gluckauf*, that in case such standard was agreed upon, there would be no difficulty about the form of judgment, saying : " It is, then, an alternative contract, and provides for payment in either of the two kinds of money, at the election of the defendant,

both of which are therein specified. The precise amount to be paid, if paid in one kind, is fixed; if paid in the other kind, the mode by which the amount is to be ascertained is clearly defined, and by that mode can be readily determined with certainty. Such being the case, the judgment by the terms of the Act in question ought ordinarily to follow the contract, and fix the amount to be paid, if paid in gold coin, and the amount to be paid, if paid in legal tender notes. The defendant could then have it paid off in either kind of money. If he did not pay voluntarily the execution would have followed the judgment, and alternatively directed the sheriff to collect in either kind of money. At the sale, the defendant could have directed the sheriff to sell for gold or legal notes at his option. If he did not so direct, the plaintiff or the sheriff could have elected." (*Lane* v. *Gluckauf*, 28 Cal. 288.)

Although this case proceeds upon the basis of a fixed standard agreed upon, and the Specific Contract Act, neither is necessary to the conclusion.

If the parties do not agree upon a standard by which the relative values of the two currencies can be measured, the law fixes it for them; and in the present instance there being no specified place of payment, the place of trial would be the market where the values should be estimated at its time.

There is no need of a Specific Contract Act, (so-called) to empower a Court to enforce a contract like the one in suit. It follows as the natural result of the propositions first stated in this opinion. In conclusion, then, this contract is not illegal.

It is in the alternative. If default be made in the payment of gold coin, then as compensation therefor the market value of such gold coin, at the time and place of trial, is to be assessed upon proper proof made, in legal tender paper dollars; and judgment should be entered accordingly, as suggested in the case last cited.

The judgment of the District Court being simply and solely for gold coin is erroneous. It is reversed, and the case is remanded with directions to proceed as indicated herein.

Johnson, J., did not participate in the foregoing decision.