# FIRST NAT'L BANK OF DEADWOOD v. SCHOOL DISTRICT NO. 1, CROOK COUNTY.

SCHOOL DISTRICT WARRANTS — PAYMENT.

1. Interest ceases on school district warrants when there is money in the treasury to pay them, and the holder is put upon inquiry to know when there are such funds, so far as the right to receive interest is concerned.

2. Where moneys of a school district were deposited in a bank by the treasurer to his credit as such, an oral direction to the cashier of the bank to pay certain warrants of the district

from the fund, constituted sufficient authority to the cashier and the bank to pay out the moneys to the holders of the warrants on presentation.

3. While a bank may require some written evidence of the order of transfer, there is no necessity for giving a written instrument, except for the purpose of evidence for the bank's protection.

4. School district warrants overdue are non-negotiable, and a purchaser takes them subject to all equities.

5. The question of payment is one for the jury on the testimony and acts of the parties, and there being sufficient evidence upon which to base a verdict for the defendant who pleads payment, the verdict will not be disturbed, on error, by the appellate court.

6. The treasurer of the school district deposited district funds in a bank to his credit as treasurer, and notified one H., an officer of another bank, which held certain warrants of the district, to send them to the bank for payment, and directed the cashier to pay them from the said fund on deposit. Said H. was also officially connected with the bank where the moneys were on deposit.    There was sufficient money then on deposit to pay the warrants.   H. admitted that his bank held the warrants, and stated to the treasurer that the deposit bank was "all right."   H. subsequently directed the treasurer to leave the money in the bank, which was done until it failed.   The warrants were not sent to the bank as requested by the treasurer.   Held that the facts amounted to an arrangement, accepted by the holder of the warrants, to pay them from the fund deposited, and justified a verdict in favor of the defendant district on its plea of payment.

[Decided December 12, 1896.   Commenced in District court, August 22, 1895.]

Error to the District Court for Crook County, Hon. W. S. Metz, Judge.

The material facts are stated in the opinion.

*M. Nichols*, for plaintiff in error, contended that the evidence conclusively established the fact that the warrants had not been paid.

*J. L. Stotts*, for defendant in error, contended that the holder of the warrants, by directing that the money be left

in the bank where deposited by the treasurer of the school district, made the bank its own agent, and the money sufficient to pay the warrants became its money, notwithstanding that it remained on deposit in the name of the treasurer; and that as there was sufficient evidence to justify the verdict, it should not be disturbed, citing Phelps v. Mc Grath, 62 Wis., 124; Ford v. Parker, 4 O. St., 576; 43 Pac., 636; Bucklin v. Miller, 40 Pac., 732; Breese v. State, 12 O. St., 155; Marshall v. Rugg, 44 Pac., 700.

GROESBECK, CHIEF JUSTICE.

The plaintiff in error brought suit in the district court for Crook County to recover on certain school orders or warrants issued by the officers of the defendant in error and drawn upon its treasurer in the amount of $1,004.40 and accruing interest thereon. The answer of defendant in error pleaded payment in full, to which a reply was filed denying payment. Upon this issue alone, the cause was submitted to a jury, which found for the defendant in error, and judgment was entered for it upon the verdict. The undisputed evidence discloses that all of the warrants were held by the Deadwood National Bank, and upon its consolidation with the First National Bank of Deadwood, they became the property of the latter bank on June 7, 1894. The warrants were issued in the years 1890–91, and the funds to pay the same were apparently raised by taxation in 1891. A notice was published in the official paper of Crook County, notifying the holders of the warrants to present the same for payment in the latter part of that year, the last call being on February 12, 1892. There is no statutory authority for the issuance of such a notice, in case of school district warrants, that we have been able to find, but it was conceded on the trial that all the warrants sued on in the action were called by publication in the Sundance *Gazette*, by the treasurer of the school district, "as required by law," in the year 1891. There is a provision of statute that school district and other public

warrants shall draw interest upon the amount expressed in the warrant at the rate of six per cent. per annum from the date of the presentation thereof for payment at the treasury or other place where the same may be made payable until there is money in the treasury for the payment thereof, and upon presentation for payment, where there is no sufficient funds for the payment of the same, the treasurer shall indorse thereon the words "not paid for want of funds," and shall date and sign the same officially. Sec. 1315, Rev. Stat., as amended by Ch. 22, Sess. Laws of 1890. The warrants, although introduced in evidence, are not before us by copies or exhibits, but no contention is made upon that point, and it will be presumed that the warrants were presented for payment and indorsed as required by law. It seems by reading the statute that interest ceases on such warrants when there is money in the treasury to pay them, and that a notice is not necessary to the holder of the warrants to stop the running of interest thereon, when funds are in the treasury to pay the same. No evidence was introduced to show that this notice or call by publication was brought home to the holder of the warrants. The district treasurer deposited the funds raised by taxation in the Crook County Bank, and notified one Higby, who was connected with that bank as an official and also with the Deadwood National Bank, to send the warrants to the former bank and take the money out, for the reason, as the treasurer stated, that there was liable to be a run on the former bank any day, and he did not want to be responsible for the warrants. Higby admitted to the treasurer that his bank at Deadwood had the warrants in controversy; and said that the Crook County Bank was· "all right." This conversation occurred on October 3 or 4, 1893. A further conversation occurred between these parties, Higby and the school district treasurer, some time in June, 1894, when Higby directed the district treasurer to leave the money in the Crook County Bank. Higby admits that he had access to the books of the Crook County Bank, but says there was never a deposit there

that he ever discovered to the credit of the Deadwood National Bank, or any that he was advised of, and he further testifies that at several different times, William Baird, cashier of the Crook County Bank, was asked if the money could be raised and the warrants paid off, and that payment was demanded of the warrants through said Baird, as cashier of the bank.    The Crook County Bank failed after the warrants passed into the hands of the First National Bank of Deadwood, and the district treasurer afterward personally accepted a dividend upon the moneys to his credit, but states that he considered the amount of such dividend "theirs," evidently meaning the holder of the warrants; and it appears that the school district received no benefit from such dividend.

The instructions to the jury were to the effect that the sole question presented by the pleadings was that of payment, and that the burden of proving payment by a preponderance of the evidence was upon the defendant.    The jury was also instructed as follows: "If you believe from the evidence that the plaintiff bank or its duly authorized agent directed the defendant to deposit the money for the payment of the warrants in question in the Crook County Bank, then in order to constitute a payment, the funds must be under the control of the plaintiff, and if you believe from the evidence that the defendant did so deposit it, you should find for the defendant.    And if you believe from the evidence that the defendant did not do so, you should find for the plaintiff."    No objection was interposed to this instruction.    The plaintiffs in error asked an instruction directing the jury to find for the plaintiff, which was refused, and an exception was taken to this ruling.    Although the instruction quoted in full was not warranted by the evidence, as the plaintiff bank was not connected with the incidents mentioned in the testimony, which related wholly to the understanding between the district treasurer and plaintiff's assignor of the warrants, the Deadwood National Bank, yet it must have been understood by the parties litigant as well as the

jury that the reference to the plaintiff bank meant or included the assignor of the plaintiff, as no objection was interposed to the instruction.   There was a conflict of evidence upon the material facts and circumstances of the case, and the jury must have accepted the version of the district treasurer.   The deposit in the bank was in the name of the school district treasurer, and was never transferred to the Deadwood National Bank, but it clearly appears that the district treasurer and one Baird, who was cashier of the bank in which the money was deposited, understood that the latter was to pay the warrants from the fund, and this oral direction was sufficient authority to pay out the moneys to the holders of the warrants on presentation.   While the bank may require some written evidence of the order of transfer, there is no necessity for giving a written instrument, except for the purpose of evidence for the protection of the bank.   Bolles on Banks, Sec. 36, citing Watts v. Christie, 11 Beav., 551, McEwen v. Davis, 39 Ind., 111.

There was sufficient testimony to warrant the verdict, as Higby, the officer of the bank holding the warrants, understood and ratified the arrangement according to the account of the school district treasurer, and had access to the books of the bank.   It seems strange that after repeated notification, the warrants were not presented for payment, particularly as we judicially know that the banks at Deadwood and those of Sundance were situated only about fifty miles apart.   The holder of the warrants was put upon inquiry under the statute to know when there were funds in the treasury, so far as the right to receive interest is concerned, yet the warrants were awaiting payment for over two years.   While this laches alone would not be sufficient to defeat a recovery for the principal sum of the warrants, and interest thereon up to the time funds were in the treasury, yet an acceptance of the arrangement to pay the warrants from the fund deposited is we think sufficient to constitute a payment.

The warrants were certainly non-negotiable paper, as

they were overdue, and so showed upon their face, and the plaintiff bank took them subject to all equities. The question of payment is one for the jury on the testimony and acts of the parties, and there being sufficient evidence upon which to base a verdict for the defendants in error, under repeated rulings of this court, as well as under an unbroken line of procedents elsewhere, we can not disturb it. (Willard v. Germer, 1 Sandf. (N. Y.), 51; Eyles v. Ellis, 4 Bingham, 112; Jones v. Babbitt, 90 N. C., 391; Moran v. Abbey, 63 Cal., 56; Knox v. Gerhauser, 3 Mont., 267; Cornish v. Central Imp. Co., 38 W. Va., 390; Hall v. Stevens, 40 Hun. (N. Y.), 578.

The judgment of the district court of Crook County is affirmed.

Conaway and Potter, JJ., concur.